## File a Court document:

13-04225-BDL Meridian Sunrise Village LLC v. NB Distressed Debt Investment Fund Limited et al

| | | |
|---|---|---|
| Type: ap | Office: 3 (Tacoma) | Judge: BDL |
| Lead Case: 3-13-bk-40342 | Case Flag: Appeal | |

**U.S. Bankruptcy Court**

**Western District of Washington**

Notice of Electronic Filing

The following transaction was received from Beushausen, Paul entered on 6/26/2013 at 12:12 PM PDT and filed on 6/26/2013

**Case Name:**      Meridian Sunrise Village LLC v. NB Distressed Debt Investment Fund Limited et al

**Case Number:**      13-04225-BDL

**Document Number:** 56

**Docket Text:**
Supplemental Transmittal of Motion and Declaration for Leave to Appeal to USDC. Appeal BK Internal Appeal Number 13-T003. USDC Number 13-CV-5503. (Related document(s)[54] Motion for Leave to Appeal, [55] Declaration). (PSB)

The following document(s) are associated with this transaction:

**13-04225-BDL Notice will be electronically mailed to:**

James L Day on behalf of Plaintiff Meridian Sunrise Village LLC
jday@bskd.com, chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;bmorgan@bskd.com

Hunter O Ferguson on behalf of Defendant N.B. Distressed Master Fund, L.P.
hoferguson@stoel.com, sea_docket@stoel.com;ldlomax@stoel.com;jawoolms@stoel.com

Hunter O Ferguson on behalf of Defendant NB Distressed Debt Investment Fund
hoferguson@stoel.com, sea_docket@stoel.com;ldlomax@stoel.com;jawoolms@stoel.com

Hunter O Ferguson on behalf of Defendant NB Distressed Debt Investment Fund Limited
hoferguson@stoel.com, sea_docket@stoel.com;ldlomax@stoel.com;jawoolms@stoel.com

Hunter O Ferguson on behalf of Defendant Strategic Value Special Situations Master Fund II LP
hoferguson@stoel.com, sea_docket@stoel.com;ldlomax@stoel.com;jawoolms@stoel.com

Brian A. Jennings on behalf of Defendant US Bank National Association
bjennings@perkinscoie.com,
mlmaag@perkinscoie.com;docketsea@perkinscoie.com;wzilka@perkinscoie.com;GEisenberg@perkinscoie.com

David B Levant on behalf of Defendant NB Distressed Debt Investment Fund
dblevant@stoel.com, sea_docket@stoel.com;ajbrumble@stoel.com

David B Levant on behalf of Defendant NB Distressed Debt Investment Fund Limited
dblevant@stoel.com, sea_docket@stoel.com;ajbrumble@stoel.com

David B Levant on behalf of Defendant Strategic Value Special Situations Master Fund II LP
dblevant@stoel.com, sea_docket@stoel.com;ajbrumble@stoel.com

Jeffrey M Odom on behalf of Defendant Bank of America National Association
jodom@pcslegal.com, danderson@pcslegal.com;jsteinert@pcslegal.com

Daniel P Pepple on behalf of Defendant Bank of America National Association
dpepple@pcslegal.com, danderson@pcslegal.com;jsteinert@pcslegal.com

Katriana L Samiljan on behalf of Plaintiff Meridian Sunrise Village LLC
ksamiljan@bskd.com, chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com

Alan D Smith on behalf of Defendant US Bank National Association
adsmith@perkinscoie.com, mlmaag@perkinscoie.com;docketsea@perkinscoie.com

Christine M Tobin-Presser on behalf of Plaintiff Meridian Sunrise Village LLC
ctobin@bskd.com, chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;bmorgan@bskd.com

**13-04225-BDL Notice will not be electronically mailed to:**

**Appeal**

# U.S. Bankruptcy Court
## Western District of Washington (Tacoma)
## Adversary Proceeding #: 13–04225–BDL

*Assigned to:* Brian D Lynch                                   *Date Filed:* 05/23/13
*Lead BK Case:* 13–40342
*Lead BK Title:* Meridian Sunrise Village LLC
*Lead BK Chapter:* 11
*Demand:*
   *Nature[s] of Suit:*   72 Injunctive relief –
                                   other
                          91 Declaratory judgment


*Plaintiff*
—————————————————

**Meridian Sunrise Village LLC**                represented by **James L Day**
c/o Chirstine M. Tobin–Presser                  Bush Strout &Kornfeld LLP
Bush Strout &Kornfeld LLP                       601 Union St Ste 5000
601 Union Street #5000                          Seattle, WA 98101
Seattle, WA 98101                               206–292–2110
206–292–2110                                    Email: jday@bskd.com
                                                *LEAD ATTORNEY*

                                                **Katriana L Samiljan**
                                                Bush Strout &Kornfeld LLP
                                                601 Union St Ste 5000
                                                Seattle, WA 98101
                                                206–292–2110
                                                Email: ksamiljan@bskd.com

                                                **Christine M Tobin–Presser**
                                                Bush Strout &Kornfeld LLP
                                                601 Union St Ste 5000
                                                Seattle, WA 98101
                                                206–292–2110
                                                Email: ctobin@bskd.com


V.

*Defendant*
—————————————————

**NB Distressed Debt Investment Fund Limited**   represented by **Hunter O Ferguson**
                                                Stoel Rives LLP
                                                600 University St Ste 3600
                                                Seattle, WA 98101
                                                206–386–7514
                                                Email: hoferguson@stoel.com

                                                **David B Levant**
                                                600 University St Ste 3600
                                                Seattle, WA 98101–3197

206–624–0900
Fax : 206–386–7500
Email: dblevant@stoel.com

*Defendant*
————————————————
**Strategic Value Special Situations Master**          represented by **Hunter O Ferguson**
**Fund II LP**                                                          (See above for address)

                                                                       **David B Levant**
                                                                       (See above for address)

*Defendant*
————————————————
**Bank of America National Association**              represented by **Jeffrey M Odom**
                                                                       Pepple Cantu Schmidt PLLC
                                                                       1501 Western Ave, Ste 600
                                                                       Seattle, WA 98101
                                                                       206–625–1644
                                                                       Email: jodom@pcslegal.com

                                                                       **Daniel P Pepple**
                                                                       Pepple Cantu Schmidt PLLC
                                                                       1501 Western Ave Ste 600
                                                                       Seattle, WA 98101
                                                                       206–625–9960
                                                                       Email: dpepple@pcslegal.com

*Defendant*
————————————————
**US Bank National Association**                      represented by **Brian A. Jennings**
                                                                       Perkins Coie LLP
                                                                       1201 3rd Ave 49th Flr
                                                                       Seattle, WA 98101
                                                                       206–264–3679
                                                                       Fax : (206) 359–9000
                                                                       Email: bjennings@perkinscoie.com

                                                                       **Alan D Smith**
                                                                       Perkins Coie LLP
                                                                       1201 3rd Ave Ste 4000
                                                                       Seattle, WA 98101–3099
                                                                       206–583–8888
                                                                       Email: adsmith@perkinscoie.com

*Defendant*
————————————————
**NB Distressed Debt Investment Fund**               represented by **Hunter O Ferguson**
                                                                       (See above for address)

                                                                       **David B Levant**
                                                                       (See above for address)

*Defendant*
————————————————
**N.B. Distressed Master Fund, L.P.**                represented by **Hunter O Ferguson**

(See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 06/25/2013 | | 54 | Emergency Motion for Leave to Appeal *&for Stay of Preliminary Injunction*. Filed by Hunter O Ferguson on behalf of N.B. Distressed Master Fund, L.P., NB Distressed Debt Investment Fund Limited, Strategic Value Special Situations Master Fund II LP. Leave to Appeal Response due: 07/10/2013. (Ferguson, Hunter) (Entered: 06/25/2013 at 15:54:36) |
| 06/25/2013 | | 55 | Declaration *of David Levant ISO Funds' Emergency Motion for Leave to Appeal &Stay of Injunction* (Related document(s)54 Motion for Leave to Appeal). Proof of Service. Filed by Hunter O Ferguson on behalf of N.B. Distressed Master Fund, L.P., NB Distressed Debt Investment Fund Limited, Strategic Value Special Situations Master Fund II LP. (Attachments: # 1 Exhibit 1–Preliminary Injunction Order # 2 Exhibit 2–Certified Transcript) (Ferguson, Hunter) (Entered: 06/25/2013 at 16:02:11) |

1

2

3

4

5                                                    HONORABLE BRIAN D. LYNCH

6

7

8                        UNITED STATES BANKRUPTCY COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10
   In re:
11
   MERIDIAN SUNRISE VILLAGE, LLC,              BANKRUPTCY NO. 13-40342-BDL
12
                      Debtor.                  ADVERSARY NO. 13-04225-BDL
13
                                               INTERNAL APEAL NO. T-003
14
   MERIDIAN SUNRISE VILLAGE, LLC,              USDC NO. 13-CV-5503RBL
15
                      Plaintiff,
16
          v.
17                                             FUNDS' EMERGENCY MOTION
   NB DISTRESSED DEBT INVESTMENT               FOR LEAVE TO APPEAL AND
18 FUND LIMITED; N.B. DISTRESSED               FOR STAY OF PRELIMINARY
   MASTER FUND, L.P.; STRATEGIC                INJUNCTION PENDING APPEAL
   VALUE SPECIAL SITUATIONS MASTER
19 FUND II, L.P.; BANK OF AMERICA
   NATIONAL ASSOCIATION; and U.S.
20 BANK NATIONAL ASSOCIATION,

21                    Defendants.

22

23          Defendants NB Distressed Debt Investment Fund Limited, NB Distressed Debt Master

24 Fund LP and Strategic Value Special Situations Master Fund II, L.P. (collectively, the "*Funds*")

25 hereby move the Court (i) pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8003 for leave to

26 appeal from a Preliminary Injunction issued by the U.S. Bankruptcy Court for the Western

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 1

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

4

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 1 of 21

1   District of Washington at Tacoma (the "***Bankruptcy Court***"), and (ii) to stay the Preliminary

2   Injunction, if necessary, pursuant to Fed. R. Bankr. P. 8005 to allow the Funds to vote on

3   confirmation of the plan of reorganization (as the same may be amended, the "***Plan***") of the

4   Plaintiff and Debtor Meridian Sunrise Village, LLC ("***Debtor***").

5          Leave to appeal should be granted because the Bankruptcy Court erred as a matter of law

6   in ruling that the Funds are not "financial institutions" for purposes of acquiring a 26.67%

7   interest in a $54,900,000 claim against the Debtor.  Based on such error, the Bankruptcy Court

8   barred the Funds from voting on the Plan, which is set for a confirmation hearing on Thursday

9   and Friday, June 27 and 28 (the "***Confirmation Hearing***").  As set forth below, the Funds will

10  suffer irreparable harm if they are disenfranchised at the Confirmation Hearing.

11         Additionally, in light of the fast-approaching Confirmation Hearing and to prevent

12  irreparable harm to the Funds, a stay of the Preliminary Injunction is warranted, until this Court

13  can rule on the Funds' request for leave to appeal and, if leave is granted, until the appeal is

14  resolved.  The Funds applied to the Bankruptcy Court for stay of the Preliminary Injunction or

15  Continuance of the Confirmation Hearing, requesting a ruling by June 24.  As the Bankruptcy

16  Court has not yet ruled on that motion, relief from this Court is warranted.

17                **I.**       **STATEMENT OF FACTS**

18         The essential pertinent facts are undisputed.  To underscore this point, the background

19  information in Parts A and B of this Statement of Facts is drawn entirely from the First Amended

20  Disclosure Statement for Debtor's First Amended Plan of Reorganization (Bankr. Doc. 75; the

21  "***Disclosure Statement***"), Debtor's Adversary Complaint (Adv. Pro. Doc. 1; the "***Complaint***"),

22  its Motion for Preliminary Injunction or Temporary Restraining Order (Adv. Pro. Doc. 2; the

23  "***Motion for PI/TRO***"); and related Declarations and Exhibits (Adv. Pro. Docs 4-1-4-9).

24         Part C details matters of record in the Debtor's bankruptcy case that also should be

25  undisputed.  Certain of these facts have occurred since entry of the Preliminary Injunction and

26  bear on the risk of irreparable harm and need for emergency relief.

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 2

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

5

Case 13-04225-BDL   Doc 54   Filed 06/25/13   Ent. 06/25/13 15:54:36   Pg. 2 of 21

**A.      Debtor, the Loan, the "Eligible Assignee" Definition and Bankruptcy**

Debtor owns the Sunrise Village, a shopping center located in the South Hill neighborhood of Puyallup.  Construction of the shopping center was financed in part through a series of loans from U.S. Bank National Association ("*US Bank*"), including a primary loan (the "*Loan*") of up to $75 million by US Bank pursuant to a certain "Loan Agreement (Vertical Construction)" dated as of April 4, 2008 (as amended, the "*Loan Agreement*") naming US Bank as Administrative Agent (the "*Agent*").

US Bank and Debtor contemplated that portions of the Loan would be assigned to other lenders ("*Lenders*"), which the Loan Agreement required to be "Eligible Assignee[s]" – a term defined in the Loan Agreement to mean in relevant part:  "any commercial bank, insurance company, financial institution or institutional lender approved by Agent in writing."  *See* Loan Agreement § 1.1 (Adv. Pro. Doc. 4-1 at 9).

Shortly after the Loan was made, US Bank assigned 26.67% of the Loan to Bank of America, N.A. ("*BofA*") and 20% of the Loan to each of Citizens Business Bank ("*Citizens*") and Guaranty Bank ("*Guaranty*"), retaining 33.33% of the Loan for itself.  *See* Complaint ¶¶ 17, 20 (Adv. Pro. Doc. 1 at 4).

The Loan had an initial maturity date of October 4, 2009, which was subsequently extended pursuant to a series of amendments to June 25, 2013.  *See* Disclosure Statement § II.A.3.a. (Bankr. Doc. 75 at 4).  In Spring 2012 the Loan was declared in default as a result of a financial covenant breach, but Debtor was nevertheless allowed to continue to accrue and pay interest at a relatively low LIBOR-based rate of interest, rather than a "Default Rate" of interest five percentage points higher.  *See id.* § II.A.3.b (Bankr. Doc. 75 at 5-6).

In Fall 2012 US Bank requested that Debtor approve a Sixth Amendment to the Loan Agreement that would revise the definition of "Eligible Assignee" to, in essence, "any Person . . . approved by Agent in writing."  *See* Emails between Chris Brain and James Gradel, dated Oct. 30 and Nov. 6, 2012, and Attachments (Adv Pro. Docs. 4-4 at 2, 4-5 at 1).  Debtor refused

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 3

74096081.4 0064727-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

6

Case 13-04225-BDL    Doc 54   Filed 06/25/13   Ent. 06/25/13 15:54:36   Pg. 3 of 21

1   to agree to the change, following which, on January 9, 2013, US Bank, acting as Agent for the

2   "Required Lenders," gave notice to Debtor that the Loan would begin to accrue interest at the

3   Default Rate.  *See* Letter from Christopher Zumberge to Meridian Sunrise Village, L.L.C., dated

4   Jan. 9, 2013 (Adv. Pro. Doc. 4-6).  In response, Debtor commenced its bankruptcy case (the

5   "***Bankruptcy Case***").  Dec. of Martin Waiss at 4, ¶ 21 (Adv. Pro. Doc. 4).

6        The Loan totaled approximately $54,900,000 on Debtor's January 18, 2013 bankruptcy

7   petition date.  *See* Disclosure Statement § III.B.1.b. (Bankr. Doc. 75 at 8).  Since the petition date

8   Debtor has continued to operate as a debtor in possession and the Lenders have entered into a

9   series of consensual "cash collateral orders" allowing Debtor to use rents generated from the

10   shopping center to pay its operating expenses and professional fees.  *Id.* § II.B. (*id.* at 6:7-15).

11   The shopping center is about 75% occupied and profitable when paying interest on the Loan at

12   the note rate.  *Id.* § II.A.1. (*id.* at 3:4-7).

13   **B.**     **The Loan Assignment, Adversary Proceeding and Preliminary Injunction**

14        On March 25, 2013 BofA assigned its interest in the Loan to NB Distressed Debt

15   Investment Fund Limited, which shortly thereafter assigned one half of its interest (*i.e.*, 13.33%

16   of the Loan) to Strategic Value Special Situations Master Fund II, L.P. and 2.76% of the Loan to

17   NB Distressed Debt Master Fund LP.  *See* Email from Christopher Zumberge to Mike Corliss,

18   dated Mar. 25, 2013 (Adv. Pro. Doc. 4-7); email from James Gradel to Chris Brain, dated Apr. 3,

19   2013 (Adv. Pro. Doc. 4-8).

20        On April 3, 2013 Debtor reserved its rights to contest the assignments of BofA's interest

21   in the Loan to the Funds and asserted that the Funds were not Eligible Assignees.  *See* Email

22   from Chris Brain to James Gradel, dated Apr. 3, 2013 (Adv. Pro. Doc. 4-9 at 1).  Debtor's

23   adversary proceeding against the Funds, BofA and US Bank and its Motion for PI/TRO followed

24   on May 23.  In its Adversary Complaint and accompanying Motion for Preliminary Injunction,

25   Debtor sought a declaratory judgment that none of the Funds qualifies as an Eligible Assignee

26   under the terms of the Loan Agreement and an injunction barring the Funds from exercising the

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 4

74096081.4 0064727-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

7

Case 13-04225-BDL   Doc 54   Filed 06/25/13   Ent. 06/25/13 15:54:36   Pg. 4 of 21

1  rights of Eligible Assignees.  *See* Complaint at ¶ 26 (Adv. Pro. Doc. 1 at 5); Motion for PI/TRO

2  at 10 (Adv. Pro. Doc. 2 at 10).

3       The Bankruptcy Court subsequently issued a Preliminary Injunction against the Funds,

4  ordering that the Funds "are ENJOINED from exercising their rights under Paragraph 12.9(b) [of

5  the Loan Agreement][1] or 11 U.S.C. § 1126 in conjunction with the casting of ballots or votes in

6  regard to the confirmation of Debtor's Plan of Reorganization."   The Bankruptcy Court

7  explained that whether the Funds qualified as "Eligible Assignees" turned on whether they are

8  "financial institutions" under the definition of an "Eligible Assignee" in the Loan Agreement.

9  *See* Tr. at 11:8-12:2 (Adv. Pro. Doc. 47).  The Bankruptcy Court concluded, as a matter of law,

10  that the Funds are not "financial institutions" for such purpose and therefore do not qualify as

11  "Eligible Assignees."  *See id.* at 12:3-15:3.

12  **C.     The Hearings on Confirmation of Debtor's Chapter 11 Plan & the Plan Amendment**

13       Debtor filed the first proposed form of its Plan on March 27 (Bankr. Doc. 62).   In

14  response to objections to the initial form of the Plan and related disclosure statement by US Bank

15  and another creditor (*see* Dec. of James L. Day at 1, ¶ 2 (Bankr. Doc. 72)), on April 19, 2013

16  Debtor filed its pending Plan (Bankr. Doc. 72-1) and Disclosure Statement (Bankr. Doc. 72-2).

17       The Bankruptcy Court approved the Disclosure Statement pursuant to an order entered on

18  April 26 (Bankr. Doc. 79), set a May 22 deadline for creditors to vote on the Plan (*id.* at 2, ¶ 3),

19  and fixed June 17, 2013 as the date for an evidentiary hearing on confirmation of the Plan, if

20  needed (*id.* at 3, ¶ 6).

21       Prior to the May 22 deadline for creditors to vote on the Plan, US Bank served on

22  Debtor's counsel both (i) the six individual ballots of the Lenders (including one for each of US

23  Bank, Citizens, Guaranty and each of the three Funds) with respect to their respective interests in

24

25       [1]  This section concerns certain decisions by the Agent (US Bank) requiring consent of
     the Lenders holding two-thirds in dollar amount of the Loan, for some actions, and unanimous
26   consent of all of the Lenders, for certain other actions.

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 5

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

8

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 5 of 21

1    the Loan and (ii) a single ballot cast by it in its capacity as the Agent for the full amount of the

2    Loan. *See* Dec. of Brian A. Jennings at 2, ¶¶ 2-4 (Adv. Pro. Doc. 12). All seven ballots—the six

3    individual ballots of the Lenders and the ballot of US Bank as Agent—were voted to reject the

4    Plan. *See* Jennings Dec. Exhs. A & B (Adv. Pro. Docs. 12-1 & 12-2). Accordingly, both US

5    Bank (*see* Adv. Pro. Doc. 31 at 5) and the Funds (*see* Adv. Pro. Doc. 37 at 4-5) argued in

6    opposition to the Motion for PI/TRO that Debtor could not show a probability of irreparable

7    harm if the Funds were allowed to vote to accept or reject the Plan because even if the Funds'

8    votes were disregarded, there would still be a unanimous vote of the remaining Lenders and the

9    Agent to reject the Plan. In addition, both US Bank (*see* Adv. Pro. Doc. 31 at 5-6) and the Funds

10   (*see* Adv. Pro. Doc. 37 at 4-5) pointed out that Debtor failed to show it would suffer irreparable

11   harm if the Funds were permitted to exercise the rights of Eligible Assignees because Debtor

12   could address any problems of so-called hold-out creditors by asking the Bankruptcy Court,

13   under Section 1129(b) of the Bankruptcy Code, to "cram down" the Plan if the Lenders rejected

14   the Plan.

15           The day after the Bankruptcy Court issued the written Preliminary Injunction, Debtor

16   filed a Notice of Intent to Amend the Plan. *See* Bankr. Doc. 141 (June 19, 2013). The Notice of

17   Intent to Amend indicated among other things that Debtor would increase the interest rate to be

18   paid to the Lenders under the Plan from 2.75% to 3.5% per annum. *See id.* at 2, ¶ D. The Notice

19   of Intent to Amend also made numerous references to Debtor's primary owner, Evergreen

20   Capital Trust ("***ECT***"), which is also a guarantor of the Loan.

21           The next day (June 20), one week before the Confirmation Hearing, Debtor filed its Brief

22   in Support of Confirmation (Bankr. Doc. 148). The Brief includes a new term:

23           As part of its reorganization plan, the Debtor seeks a temporary injunction
             restraining any creditor, party-in-interest or any third party from pursuing any
24           officer, director, or shareholder of the Debtor on account of any claim based on a
             guaranty. The duration of such injunction would be only until eighteen months
25           following the time the Phase I property achieves stabilization.

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 6

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

9

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 6 of 21

1   *Id.* at 22:14-17.  US Bank has moved to strike this term from the Plan, and the hearing on this

2   motion is set for June 26 at 10:00 a.m., fewer than 24 hours before the scheduled start of the

3   Confirmation Hearing.  *See* Motion to Strike Material Modification to First Amended Plan of

4   Reorganization (Bankr. Doc. 154); "Set Hearing" Minute Entry, entered on 6/24/2013 at 1:44

5   PM PDT).

6       As a result of the Notice of Intent to amend the Plan and the statement in the Brief in

7   Support of Confirmation, it is no longer clear whether the Lenders (*other than* the Funds) are, or

8   will remain, unanimous in their rejection of the Plan, or what additional plan modifications and

9   related  negotiations designed to win or coerce Lender support might occur before the conclusion

10   of the Confirmation Hearing.  It also is not clear whether the Confirmation Hearing can be

11   concluded on June 28 if the Motion to Strike is denied and Debtor is allowed to amend the Plan

12   to enjoin the Lenders from enforcing ECT's guaranty of the Loan.

13   **D.**      **The Funds' Request for Stay/Continuance and Basis for Emergency Relief**

14       Considering the close proximity of the issuance of the Preliminary Injunction (June 18) to

15   the start of the Confirmation Hearing (June 27), the typical schedule for briefing and considering

16   the Funds' Motion for Leave to Appeal would not allow this motion to be decided before

17   conclusion of the Confirmation Hearing.  As detailed in the Declaration of David Levant filed

18   herewith, counsel for the Funds attempted but was unable to obtain consent from the other

19   parties to a stay of the Preliminary Injunction or continuance of the Confirmation Hearing

20   pending resolution of this motion and/or appeal.  And as noted in the Introduction, the Funds also

21   filed with the Bankruptcy Court an expedited Motion for Stay of the Preliminary Injunction or

22   Continuance of Confirmation Hearing, requesting a ruling by June 24.  *See* Adv. Pro. Docs. 43 &

23   44.  As of this filing, the Bankruptcy Court has not ruled on that motion.

24

25

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 7

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

10

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 7 of 21

## II.     THE PRELIMINARY INJUNCTION AND RELATED OPINION

A copy of the Bankruptcy Court's June 18, 2013 Preliminary Injunction Order (Adv. Pro. Doc. 39; the "***Preliminary Injunction***") and a certified transcript of the Bankruptcy Court's oral opinion relating thereto are attached as Exhibits 1 and 2 to the supporting Declaration of David B. Levant, filed herewith.

## III.     QUESTIONS PRESENTED AND RELIEF SOUGHT

### A.     Motion for Leave to Appeal

The Funds' Motion for Leave to Appeal presents the central question whether, as a matter of Washington law, the phrase "Eligible Assignee" as used in the Loan Agreement means "***any*** commercial bank, insurance company, ***financial institution*** or institutional lender ***approved in writing by the Agent***" (emphases added), as argued by the Funds, US Bank and BofA, or if it means "any commercial bank, insurance company, financial institution ***[that regularly makes loans]*** or institutional lender approved in writing by the Agent," as claimed by Debtor and determined by the Bankruptcy Court.

The Funds request that the Court rule as a matter of law that they are "Eligible Assignee[s]" for purposes of the Loan Agreement and dissolve the Preliminary Injunction.

### B.     Motion for Stay of Preliminary Injunction

The Funds' Motion for Stay of Preliminary Injunction raises the same question as the Motion for Leave to Appeal and three additional issues in the context of the four-part test for issuance of a stay under Fed. R. Bankr. P. 8005, *i.e.*:

(1)     whether the applicant has made a strong showing that it is likely to succeed on the merits;

(2)     whether the applicant will be irreparably injured absent a stay;

(3)     whether issuance of the stay will substantially injure the other parties interested in the proceedings; and

(4)     where the public interest lies.

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 8

74096081.4 0064727-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

11

Case 13-04225-BDL   Doc 54   Filed 06/25/13   Ent. 06/25/13 15:54:36   Pg. 8 of 21

1    For purposes of this Motion, the Funds request that the Court:  (1) rule that they have

2  made a strong showing that they are likely to succeed on the merits that they are "Eligible

3  Assignee[s]" for purposes of the Loan Agreement; (2) find that the Funds will be irreparably

4  injured if they are deprived of the right to vote on the Plan; (3) find that a stay of the Preliminary

5  Injunction will not substantially injure Debtor or the other parties interested in the Bankruptcy

6  Case; and (4) hold that the public interest lies in allowing the Funds, as (collectively) the holders

7  of the second largest claim in the Bankruptcy Case, to vote their claims on the Plan.

8                **IV.    WHY LEAVE TO APPEAL SHOULD BE GRANTED**

9  **A.    Legal Standard**

10    Pursuant to 28 U.S.C. § 158(a)(3), district courts have discretion to hear interlocutory

11  appeals from bankruptcy court orders.  *See In re Clark*, No. CO9-1373RAJ, 2010 WL 2639842,

12  at *2 (W.D. Wash. June 28, 2010).  In determining whether to grant leave, district courts apply

13  the same standard that courts of appeal apply to motions for interlocutory appeal under 28 U.S.C.

14  § 1292(b).  *Id.* (citing *In re Burke*, 95 B.R. 716, 717 (BAP 9th Cir. 1989)).  Interlocutory review

15  is appropriate when the reviewing court is "of the opinion" that the order at issue "involves a

16  controlling question of law as to which there is a substantial ground for difference of opinion and

17  that an immediate appeal from the order may materially advance the ultimate termination of [the]

18  litigation." 28 U.S.C. § 1292(b).  Each of these criteria is met here.

19  **B.    The Proper Interpretation of "Eligible Assignee" Is a Controlling Question of Law.**

20    As the Bankruptcy Court observed (Tr. at 12:1-2), the critical point at issue between the

21  Debtor on the one hand and US Bank, BofA, and the Funds on the other is whether the Funds are

22  "financial institutions" and therefore qualify as "Eligible Assignees" under the Loan Agreement.

23  If the Funds qualify as "Eligible Assignees," then they enjoy certain rights under the Loan

24  Agreement, including the right to vote to approve or disapprove any Plan presented by the

25  Debtor.  Accordingly, the interpretation of the term "financial institution" is determinative of the

26  Funds' rights.

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 9

74096081.4 0064727-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

12

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 9 of 21

1  **C.      The Bankruptcy Court Misinterpreted the Term "Eligible Assignee."**

2          The Loan Agreement is governed by Washington law (*see* Loan Agreement § 14.15

3  (Adv. Pro. Doc. 4-1 at 65)), and the Washington courts follow the "objective manifestation"

4  theory of contracts:

5          Under this approach, we attempt to determine the parties' intent by focusing on
          the objective manifestations of the agreement, rather than on the unexpressed
6          subjective intent of the parties.  We impute an intention corresponding to the
          reasonable meaning of the words used.  Thus, when interpreting contracts, the
7          subjective intent of the parties is generally irrelevant if the intent can be
          determined from the actual words used.  We generally give words in a contract
8          their ordinary, usual and popular meaning unless the entirety of the agreement
          clearly demonstrates a contrary intent.  We do not interpret what was intended to
9          be written but what was written.

10 *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005)

11 (quotation marks and citations omitted).

12         In their initial Objection to the Motion for PI/TRO (Adv. Pro. Doc. 19 at 4-5), the Funds

13 urged the Bankruptcy Court to find that they qualified as "Eligible Assignees" because they met

14 the common legal definition of a "financial institution."   Again, the Loan Agreement defines an

15 "Eligible Assignee" in relevant part as "any commercial bank, insurance company, financial

16 institution or institutional lender approved by Agent [US Bank]."   *See* Loan Agreement § 1.1

17 (Adv. Pro. Doc. 4-1 at 9).   The Loan Agreement does not further define the term "financial

18 institution."   *Black's Law Dictionary* defines "financial institution" as "A business, organization,

19 or other entity that manages money, credit, or capital, such as a bank, credit union, savings-and-

20 loan association, securities broker or dealer, pawnbroker, or investment company."   *Black's Law

21 Dictionary* 707 (9th Ed. 2009).   *Black's* defines an "investment company," in turn, as "A

22 company formed to acquire and manage a portfolio of diverse assets by investing money

23 collected from different sources."   *Id*. at 319.

24

25

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

74096081.4 0064727-00001

1    Although the Funds cited numerous cases that relied on *Black's* definition of a "financial

2    institution" (*see* Adv. Pro. Doc. No. 32 at 3-6) the Bankruptcy Court rejected the Funds' simple

3    "ordinary meaning" approach to the term for the following reasons:

4          1.    In the Bankruptcy Court's view, because portions of the Revised Code of
5                  Washington use the term financial institution in a narrower sense than the
6                  *Black's* definition and because Washington law governs the Loan
              Agreement, the term "financial institution" is ambiguous, and its meaning
7                  must therefore be construed according to surrounding contract terms.  Tr.
              at 12:14-18, 13:9-20, 14:4-9.

8          2.    *Black's* definition, the Bankruptcy Court continued, is "so broad that it
9                  essentially writes out the need to have any other terms [in the definition of
              Eligible Assignee]" (*i.e.*, commercial bank, insurance company or
10                 institutional lender).  Tr. at 13:21-14-3.

11         3.    Applying the *noscitur a sociis* canon of construction, the Bankruptcy
12                 Court concluded that the contracting parties intended the term "financial
              institution" to have a "more restrictive definition" than that in *Black's* and
13                 to refer to an entity engaged in the business of *making* loans because "each
              of the other entities identified in the definition of 'eligible assignee' is an
14                 entity which makes loans."  Tr. at 14:4-12.

15         4.    The Bankruptcy Court sought to buttress this reasoning by "looking at the
16                 purpose of the loan agreement overall," as evidenced by the original
              assignee Lenders' loaning of funds to the Debtor on a pro rata basis.  Tr. at
17                 14:15-21.

18   Because the Funds "are not in the business of loaning money" but, rather "invest and hold

19   investment assets" (including loans) and because "[t]here are other financial institutions which

20   loan money, such as mortgage bankers and other lenders," the Bankruptcy Court reasoned, the

21   term "financial institution" as used in the Loan Agreement does not refer to the Funds. Tr. at

22   15:1-13.  Therefore, it concluded, none of the Funds qualifies as an "Eligible Assignees."  *Id.*

23         Each link in this chain of reasoning is fatally flawed.  *First*, there is no basis to impute the

24   definition of "financial institution" as that term is used in different sections of the Revised Code

25   of Washington to the intent of the parties to the Loan Agreement.  Nothing in the Loan

26   Agreement references state statutory definitions as a point of reference for undefined terms such

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 11

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

14

1    as "financial institution."  Washington courts regularly rely on dictionary definitions – both

2    *Black's* and standard dictionaries – to ascertain the plain, ordinary, and popular meaning of

3    undefined contract terms.  *See, e.g.*, *Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*,

4    126 Wn.2d 50, 77, 882 P.2d 703 (1994); *Reliable Credit Ass'n, Inc. v. Progressive Direct Ins.*

5    *Co.*, 171 Wn. App. 630, 640, 287 P.3d 698 (2012).  Similar to the definition in *Black's*, the

6    standard dictionary definition is broad.  *See, e.g.*, *Webster's Third New International Dictionary*

7    851 (2002) (defining "financial institution" as "an enterprise specializing in the handling and

8    investment of funds (as a bank, trust company, insurance company, savings and loan company,

9    or investment company)").  Critically, neither *Black's* nor *Webster's* limits the term financial

10   institution to entities regularly engaged in the business of making loans.

11       Moreover, it is improper to read an ambiguity into a contract term that is otherwise clear

12   and unambiguous.  *Mayer v. Pierce Cnty. Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d

13   1323 (1995).  An ambiguity does not exist merely because the term "financial institution" has a

14   broad meaning and potentially includes other entities listed in the definition of "Eligible

15   Assignee." Accordingly, the Bankruptcy Court erred in concluding that the term was ambiguous.

16       *Second*, the Court's critique that "financial institution," as used in the Loan Agreement,

17   must have a narrower meaning than the *Black's* definition because otherwise it would "write[ ]

18   out the need to have other terms" is subject to this very same criticism.  Under the Bankruptcy

19   Court's reasoning, which holds that financial institutions must be regular lenders to be Eligible

20   Assignees, the term "institutional lender" would swallow the terms "commercial bank,"

21   "insurance company" and "financial institutional."

22       Further, the words framing the list of different types of "Eligible Assignee" support a

23   broad interpretation of financial institution, not the narrow one announced by the Bankruptcy

24   Court.  The definition refers to "*any* commercial bank, insurance company, financial institution

25   or institutional lender *approved by Agent in writing* . . . ."  The Bankruptcy Court should have

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

1   found the broad definition of "financial institution" in *Black's* (and also *Webster's*) perfectly

2   consistent with the language "any . . . financial institution . . . approved by Agent in writing."

3       *Third*, the Bankruptcy Court's conclusion that the definition of "Eligible Assignee"

4   includes only entities that make loans (as opposed to investing in them) is wrong because it

5   assumes the existence of evidence that was not in the record and ignored information that

6   contradicted its view.   Specifically, the Bankruptcy Court assumed without any basis that

7   insurance companies are lenders – like commercial banks and institutional lenders – and

8   therefore that only those sorts of financial institutions that are lenders fit the category of

9   "Eligible Assignee."   The Funds directly contradicted the notion that insurance companies are

10  lenders by reference to a recent report prepared by the National Association of Insurance

11  Commissioners, finding that 65% of life insurers *do not even hold* commercial loans.   As

12  explained in the NAIC report,

13          Commercial mortgage loan investments are concentrated within a
      relatively small number of insurers, because a significant volume of commercial

14        mortgage loans is necessary to economically justify the infrastructure needed to
      participate in this asset class. An effective commercial mortgage loan origination

15        effort requires extensive specialized expertise, as well as other resources.

16  NAIC, *The Insurance Industry's Exposure to Commercial Mortgage Lending and Real Estate:*

17  *A Detailed Review of the Life Insurance Industry's Commercial Mortgage Loan Holdings (Part*

18  *II)* at 1 (Oct. 26, 2012) (available at http://www.naic.org/capital_markets_archive/121220.htm).

19  A copy of the NAIC report is attached to the Funds' Reply to Debtor's Supplemental

20  Memorandum as Exhibit 1 (Bankr. Doc. 37-1).

21      *Fourth*, the Bankruptcy Court assumed without any evidentiary basis that the purpose of

22  the "Eligible Assignee" definition was focused solely on the funds-advancing period of a loan,

23  completely disregarding the possibility that the term also bears on who could acquire interests in

24  fully-extended and defaulted loans.   Although setting terms to advance loan funds to Debtor was

25  certainly a purpose of the Loan Agreement, the Loan Agreement also provided terms for

26  managing the Debtor's obligations and repayment of debt.   Nothing in the Loan Agreement

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

16

74096081.4 0064727-00001

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 13 of 21

1  provided that an entity could not receive an assignment of an interest in the Loan if it did not also

2  extend loan funds.  Such a requirement would effectively bar loan assignment after the Loan was

3  fully funded or in default.

4       In sum, without any evidentiary basis for doing so, the Bankruptcy Court re-wrote the

5  definition of "Eligible Assignee," taking it from "*any* commercial bank, insurance company,

6  financial institution or institutional lender"  to "any *institutional lender*."   As the above

7  discussion shows, this ruling deviates from basic principles of contract interpretation under

8  Washington law.   At the very least there is a substantial ground for difference of opinion

9  warranting interlocutory review.[2]

10  **D.     Immediate Review Will Advance the Ultimate Termination of the Litigation.**

11       Interlocutory review will promote resolution of the dispute herein because it will

12  determine which parties will be able to vote on confirmation of the Plan.  If the Funds are

13  excluded from voting on the Plan, then all parties and the Bankruptcy Court face the possibility

14  of having to restart the plan confirmation process, in the event that the Funds successfully pursue

15  an appeal from final judgment.  This waste of resources can be avoided through immediate

16  review of the discrete and straightforward issue of contract interpretation presented here.

17  **V.     WHY THE PRELIMINARY INJUNCTION SHOULD BE STAYED**

18       As explained above, the Confirmation Hearing on Debtor's Plan is scheduled to take

19  place later this week on June 27 and 28.  There is a possibility that the Confirmation Hearing

20  may be postponed depending on the Bankruptcy Court's ruling on the Funds' Motion for

21  Stay/Continuance and the motion of US Bank to strike Debtor's proposed amendments to the

22  Plan.  In the event that the Bankruptcy Court stays enforcement of the Preliminary Injunction or

23  _____

24  [2] As the Funds also argued before the Bankruptcy Court (*see* Adv. Pro. Doc. 47 at 4-5) and as is explained in Part V.B *infra*, Debtor failed to establish that it would suffer irreparable harm in the absence of an injunction because Debtor would retain the right to request a "cram down" under Section 1129(b) of the Bankruptcy Code.  That the plan confirmation process is judicially supervised is yet another reason why it is improper to disenfranchise the Funds in the face of the plain, ordinary meaning of "financial institution."

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 14

74096081.4 0064727-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

17

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 14 of 21

1  continues the Confirmation Hearing pending appeal, the Funds' rights and interests will not be

2  jeopardized.  But if the Confirmation Hearing proceeds as scheduled, the Funds will forever have

3  been stripped of their right to vote on the Plan.  Thus, to ensure that they can receive meaningful

4  appellate relief, the Funds request that this Court stay the Preliminary Injunction, pending appeal.

5  **A.      Legal Standard**

6  As noted, courts consider four factors when reviewing a motion for stay pending appeal:

7  
8
(1)      whether the applicant has made a strong showing that it is likely to
          succeed on the merits;

9
10
(2)      whether the applicant will be irreparably injured absent a stay;

(3)      whether issuance of the stay will substantially injure the other
          parties interested in the proceedings; and

11       (4)      where the public interest lies.

12  *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011); *Stormans Inc. v. Selecky,* 526 F.3d

13  406, 408 (2008).

14  These factors are reviewed in "'two interrelated legal tests' that 'represent the outer

15  reaches of a single continuum.' . . . 'At one end of the continuum, the moving party is required to

16  show both a probability of success on the merits and the possibility of irreparable injury. . . . At

17  the other end of the continuum, the moving party must demonstrate that serious legal questions

18  are raised and the balance of hardships tips sharply in its favor.'" *Golden Gate Restaurant Ass'n*

19  *v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting  *Lopez v.*

20  *Heckler*, 713 F.2d 1432, 1436 (9th Cir. 1983)).  Each of these factors weighs strongly in favor of

21  a stay pending appeal.

22  **B.      The Funds Are Likely to Prevail on the Merits of the Appeal.**

23  In issuing the Preliminary Injunction, the Bankruptcy Court committed two separate and

24  distinct reversible errors.   *First*, as explained above, it misconstrued the term "Eligible

25  Assignee."

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 15

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

18

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 15 of 21

1    *Second*, the Bankruptcy Court erroneously found that the Debtor would face irreparable

2    harm without an injunction.  *See* Tr. at 15:14-19:20.  It is axiomatic that irreparable harm, as

3    Debtor has alleged, exists predominantly in the absence of adequate legal remedies. *See Beacon*

4    *Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 79 S. Ct. 948, 954, 3 L. Ed. 2d 988 (1959)

5    ("The basis of injunctive relief in the federal courts has always been irreparable harm and

6    inadequacy of legal remedies"); *In re Aerovox, Inc.*, 281 B.R. 419, 433 (Bankr. D. Mass. 2002)

7    ("It is well settled that lack of an adequate remedy at law is a substantial element of irreparable

8    harm").  To the extent an effective remedy is already within reach, preliminary relief is not

9    necessary.  *See, e.g., In re Vitro, S.A.A de C.V.*, 455 B.R. 571, 581 (Bankr. N.D. Tex. 2011)

10   (noting that the ability to file bankruptcy constitutes an adequate remedy at law); *cf. Inmates of*

11   *Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 21 (2d Cir. 1971) (the ability to file a motion to

12   suppress negates the need for injunctive relief).

13       One of the extraordinary aspects of this proceeding is that the Preliminary Injunction is

14   expressly intended to prevent the Funds from participating in the judicially supervised plan-

15   confirmation process in which there are clear statutory remedies available to Debtor.  In this case

16   a legal remedy is not merely available, it is provided by statute and  contemplated in Debtor's

17   Plan.  If the Funds attempt to block a consensual confirmation of the Plan under Section 1129(a),

18   the Bankruptcy Court has the power – indeed, the Bankruptcy Court could be compelled by

19   Debtor – to confirm the Plan under Section 1129(b) of the Bankruptcy Code.[3]  Debtor's Plan

20   expressly contemplates this possibility, as described in its Disclosure Statement:

21

22   _____

23       [3]   [I]f all of the requirements of [section 1129(a)] other than paragraph 8
         [requiring that each class of impaired claims has accepted a plan] are met with
         respect to the plan, the court, on request of the proponent under the plan, shall

24       confirm the plan notwithstanding the requirements of such paragraph if the plan
         does not discriminate unfairly, and is fair and equitable, with respect to the class

25       of claims . . . that is impaired under, and has not accepted, the plan.

26   11 U.S.C. § 1129(b)(1).

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 16

74096081.4 0064727-00001

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 16 of 21

1         The Bankruptcy Code requires the Bankruptcy Court to find that the Plan
does not discriminate unfairly, and is fair and equitable, with respect to each class
2    of claims or interests that is impaired under, and has not accepted, the Plan.  Upon
such a finding, the Bankruptcy Court may confirm the Plan despite the objections
3    of a dissenting class of creditors.  Here, the Debtor has requested that the Court
confirm the Plan even if creditors holding claims in impaired classes do not accept
4    the Plan.

5    *See* Disclosure Statement at 18:1-4 (Bankr. Doc. No. 75).  It is hard to imagine a clearer case

6    where an allegedly aggrieved party has a complete adequate "remedy at law."

7         Debtor has provided no good reason why is cannot avail itself of the tools provided in the

8    Bankruptcy Code for plan confirmation over the objection of dissenting creditors.  In addition to

9    the ability to confirm its Plan pursuant to Section 1129(b), Debtor can seek to have the Funds'

10   votes designated pursuant to Section 1126(e) of the Bankruptcy Code, 11 U.S.C. § 1126(e), if it

11   believes they were cast in bad faith.   Circumventing these protective mechanisms through

12   injunctive relief was inappropriate.

13   **C.**   **The Funds Will be Irreparably Injured Absent a Stay.**

14        In contrast to Debtor, the Funds face a substantial risk of irreparable injury.  If the Plan is

15   confirmed without the Funds' participation, there will not be a second confirmation hearing, the

16   Funds' votes will never be counted and there is no mechanism for the Funds to recover damages

17   or obtain other relief from injury.  The Funds' injury is in the loss of their power to vote on the

18   Plan.  If a binding vote takes place without the Funds' participation, this injury cannot be

19   remedied.

20        Without a stay of the Preliminary Injunction, the Funds also face the risk that their appeal

21   will be dismissed as equitably moot.  If the Confirmation Hearing goes forward and the Plan is

22   confirmed, Debtor will likely move quickly to consummate the Plan.  Once this occurs, Debtor

23   will almost certainly argue that the Funds' appeal should be dismissed based on "equitable

24   mootness" – a prudential doctrine that applies when granting relief is not impossible, but would

25   entail considerable practical difficulty.   The doctrine is typically invoked after a plan of

26   reorganization has been confirmed and substantially consummated. *See, e.g., United States Tr. v.*

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 17

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

20

1   *Official Comm. of Equity Sec. Holders (In re Zenith Elecs. Corp.),* 329 F.3d 338, 340 (3d Cir.

2   2003) ("the equitable mootness doctrine is to be applied only in order to 'prevent[ ] a court from

3   unscrambling complex bankruptcy reorganizations when the appealing party should have acted

4   before the plan became extremely difficult to retract'") (citation omitted).  Although the Funds

5   submit that the equitable mootness doctrine cannot properly be applied here in light the Funds'

6   prompt efforts to protect their rights, the risk that it would be applied is real, especially where the

7   Funds would be unable to vote on the terms of a Plan.

8   **D.    A Stay Will Not Injure Other Interested Parties.**

9        A stay of the Preliminary Injunction will not injure Debtor or the other parties to its

10  bankruptcy case.  The case was commenced primarily in relation to the Loan, which has been

11  outstanding since 2008, was originally supposed to mature in 2009, and has been in default for

12  more than a year already.  *See* Disclosure Statement at 4:13-6:5 (Bankr. Doc. 75).  Debtor has

13  continued to operate since filing for bankruptcy pursuant to a series of cash collateral orders that

14  have been continued on an agreed basis.  *See id.* at 6:9-13.[4]  Debtor's property – the Sunrise

15  Village shopping center in Puyallup – is complete, about 75% occupied and profitable.  *Id.* at

16  2:16-3:6.  Under the circumstances, the Funds are not aware of any reason why a stay would

17  injure the Debtor or other parties to the bankruptcy case or this adversary proceeding.

18  **E.    A Stay Is in the Public Interest.**

19       The right to vote on a plan of reorganization is one of the key rights of creditors in

20  chapter 11 cases.  *See In re Heritage Org., L.L.C.*, 376 B.R. 783, 794 (Bankr. N.D. Tex. 2007)

21  ("A right to vote on a plan is a fundamental right of creditors under chapter 11."); *In re Adelphia*

22  *Comm'ns Corp.,* 359 B.R. 54, 61 (Bankr. S.D.N.Y. 2006) (same). To thwart that right

23

24      ───────────────

        [4]  A further agreed order appears to be about to be entered on the bankruptcy case docket.

25  *See*  "Notice to Court Agreement Reached, Agreed Order to be Submitted on Date of Hearing:
    6/26/2013. Filed by James L Day on behalf of Meridian Sunrise Village LLC.  (Related

26  document(s)[119] Motion for Use of Cash Collateral)."

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 18

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

74096081.4 0064727-00001

21

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 18 of 21

1   unnecessarily is contrary to the clear purpose and intent of the Bankruptcy Code.   The

2   Preliminary Injunction contravenes this fundamental right under the Bankruptcy Code.

3          There also is a strong public interest in preserving the right of appellate review.   *See, e.g.,*

4   *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 361

5   B.R. 337, 342 (S.D.N.Y. 2007) ("The ability to review decisions of the lower courts is the

6   guarantee of accountability in our judicial system.").   Because of the risk of equitable mootness

7   (*see supra* pages 17-18), a right that may be frustrated in this case if a stay is denied

8          Finally, in granting the Preliminary Injunction the Court cited the public policy of the

9   State of Washington of enforcing contracts governed by its laws.   The public policy, of course, is

10   to enforce them correctly, a public policy which in this case dictates a stay so that the appropriate

11   courts can ensure that the important contract interpretation issue in this case is decided *correctly*.

12                                      **VI.    CONCLUSION**

13          As set forth above, in holding that the Funds are not "financial institutions" and therefore

14   do not qualify as "Eligible Assignees" under the Loan Agreement, the Bankruptcy Court issued

15   an incorrect ruling on a controlling question law.   By enjoining the Funds from voting on the

16   Plan, the Court's ruling also will irreparably harm the Funds by stripping them of some of their

17   most important rights as creditors.   All of the grounds advanced in support of this Motion were

18   submitted to the Bankruptcy Court.   Accordingly, this Court should enter an order (i) granting

19   the Funds leave to appeal from the Preliminary Injunction and (ii) staying the effect of the

20   Preliminary Injunction until the appeal is resolved.

21   //

22   //

23   //

24   //

25   //

26   //

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 19

74096081.4 0064727-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

22

Case 13-04225-BDL    Doc 54    Filed 06/25/13    Ent. 06/25/13 15:54:36    Pg. 19 of 21

1       DATED this 25th day of June 2013.

2                         STOEL RIVES LLP

3

4                         s/David B. Levant
                      David B. Levant, WSBA No. 20528
                      Hunter Ferguson, WSBA No. 41485

5

6                         Of Attorneys for NB Distressed Debt
                      Investment Fund Limited, NB Distressed Debt
                      Master Fund LP, and Strategic Value Special

7                         Situations Master Fund II, L.P.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 20

74096081.4 0064727-00001

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

3  the CM/ECF system which will send notification of such filing to the following:

4   - James L Day     jday@bskd.com,
5     chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;bmorga
      n@bskd.com
6   - Brian A. Jennings     bjennings@perkinscoie.com,
      mlmaag@perkinscoie.com;docketsea@perkinscoie.com;wzilka@perkinscoie.com;GEise
7     nberg@perkinscoie.com
    - Jeffrey M Odom     jodom@pcslegal.com,
8     danderson@pcslegal.com;jsteinert@pcslegal.com
    - Daniel P Pepple     dpepple@pcslegal.com,
9     danderson@pcslegal.com;jsteinert@pcslegal.com
10  - Katriana L Samiljan     ksamiljan@bskd.com,
      chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com
11  - Alan D Smith     adsmith@perkinscoie.com,
      mlmaag@perkinscoie.com;docketsea@perkinscoie.com
12
    - Christine M Tobin-Presser     ctobin@bskd.com,
13    chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;
      bmorgan@bskd.comThere are no manual receipts.
14
      DATED at Seattle, Washington, this 25th day of June 2013.
15

16                                STOEL RIVES LLP

17
                                  s/Hunter Ferguson
18                                David B. Levant, WSBA No. 20528
                                  Hunter Ferguson, WSBA No. 41485
19
                                  Of Attorneys for NB Distressed Debt
20                                Investment Fund Limited, NB Distressed Debt
                                  Master Fund LP, and Strategic Value Special
21                                Situations Master Fund II, L.P.

22

23

24

25

26

FUNDS' EMERGENCY MOTION FOR
LEAVE TO APPEAL AND FOR STAY
OF PRELIMINARY INJUNCTION – 21

74096081.4 0064727-00001

1                                          HONORABLE BRIAN D. LYNCH

2

3

4

5

6

7

8                     UNITED STATES BANKRUPTCY COURT
                      WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10

    In re:
11
                                            |   BANKRUPTCY NO. 13-40342-BDL
    MERIDIAN SUNRISE VILLAGE, LLC,
12                                          |   ADVERSARY NO. 13-04225-BDL
                   Debtor.
13                                          |   INTERNAL APPEAL NO. T-003
    ─────────────────────────────
14                                          |   USDC NO. 13-CV-5503RBL
    MERIDIAN SUNRISE VILLAGE, LLC,
15                                          |   DECLARATION OF DAVID B.
                   Plaintiff,               |   LEVANT IN SUPPORT OF FUNDS'
16                                          |   EMERGENCY MOTION FOR LEAVE
           v.                               |   TO APPEAL AND FOR STAY OF
17                                          |   PRELIMINARY INJUNCTION
    NB DISTRESSED DEBT INVESTMENT           |   PENDING APPEAL
18  FUND LIMITED; N.B. DISTRESSED           |
    MASTER FUND, L.P.; STRATEGIC            |
19  VALUE SPECIAL SITUATIONS MASTER         |
    FUND II, L.P.; BANK OF AMERICA          |
20  NATIONAL ASSOCIATION; and U.S.          |
    BANK NATIONAL ASSOCIATION,              |
21                                          |
                   Defendants.              |
22  ─────────────────────────────

23         I, David B. Levant, declare under penalty of perjury of the laws of the United States that:

24         1.     I have personal knowledge of and am competent to testify to the following facts.

25         2.     I am a partner in Stoel Rives LLP and counsel of record for Defendants NB

26  Distressed Investment Fund Limited, NB Distressed Debt Master Fund LP, and Strategic Value

DECLARATION OF DAVID B. LEVANT IN SUPPORT
OF FUNDS' EMERGENCY MOTION FOR LEAVE TO
APPEAL AND FOR STAY OF INJUNCTION – 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

25

1  Special Situations Master Fund II, L.P. (collectively, the "**Funds**") in the above-referenced

2  adversary proceeding (the "**Adversary Proceeding**").   This Declaration relates to the Funds'

3  Emergency Motion for Leave to Appeal and for Stay of Preliminary Injunction Pending Appeal

4  (the "**Emergency Motion**").

5       3.      Plaintiff-Debtor Meridian Sunrise Village, LLC ("**Debtor**") and the Funds

6  disagree whether the Funds qualify as "Eligible Assignee[s]" under the terms of the Loan

7  Agreement at issue in this matter (the "**Loan Agreement**"), a status that gives the Funds certain

8  rights vis-à-vis Debtor, including the right to vote on confirmation of any Plan of Reorganization

9  for Debtor ("**Plan**").

10      4.      On May 23, 2013, Debtor filed a Motion for Preliminary Injunction or Temporary

11  Restraining Order (the "**Motion**"), seeking to enjoin the Funds from exercising any of the rights

12  of an Eligible Assignee under the Loan Agreement.   The Funds filed an Objection to the Motion

13  on May 28, 2013.

14      5.      Following an initial hearing on the Motion on May 29, both Debtor and the Funds

15  filed  Supplemental Briefs on June 10 and Reply Briefs on June 13, 2013.

16      6.      On June 17, 2013, the Honorable Brian D. Lynch, U.S. Bankruptcy Judge for the

17  Western District of Washington, read an oral ruling into the record herein containing findings of

18  fact and conclusions of law and setting forth his reasons for granting the Motion.   On June 18,

19  the Bankruptcy Court entered a written Order granting Debtor's Motion for Preliminary

20  Injunction (the "**Preliminary Injunction**").   True and correct copies of the Bankruptcy Court's

21  written Order of Preliminary Injunction and the certified transcript of the June 17 hearing are

22  attached hereto as Exhibits 1 and 2.

23      7.      The Preliminary Injunction enjoins the Funds from voting on the Plan.   The

24  hearing on confirmation of the Plan (the "**Confirmation Hearing**") is presently scheduled for

25  June 27 and 28.

26

DECLARATION OF DAVID B. LEVANT IN SUPPORT
OF FUNDS' EMERGENCY MOTION FOR LEAVE TO
APPEAL AND FOR STAY OF INJUNCTION – 2

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

26

1    8.    On June 20, 2013 I emailed counsel for Debtor and the other parties to the

2    Adversary Proceeding, advising them that the Funds had directed me to file a motion for leave to

3    appeal the Preliminary Injunction and requesting that Debtor and the other parties stipulate to a

4    stay or continuance of the Confirmation Hearing pending resolution of the motion for leave to

5    appeal.

6    9.    My email further advised counsel that, assuming one or more of the parties was

7    not willing to stipulate to a stay, the Funds planned to file in the Bankruptcy Court a motion for

8    stay of the Preliminary Injunction or for Continuance of the Confirmation Hearing, pending

9    appeal (as well as a combined motion for leave to appeal and for a stay pending appeal).

10    10.    In the email I indicated that, in light of the imminent Confirmation Hearing and

11    possible witness travel plans, I also planned to file Motions to Shorten Time, requesting (1) that

12    the Bankruptcy Court rule on the Motion for Stay by the end of the day on Monday, June 24, and

13    (2) that the District Court rule on the Motion for Leave and stay by the end of day on Tuesday,

14    June 25.  I advised counsel that both the Motion to Stay in the Bankruptcy Court and the Motion

15    for Leave to Appeal are likely to address many of the same issues.

16    11.    Finally, my email requested that, if the parties were not willing to stipulate to a

17    stay, counsel should advise if they would be willing to stipulate to a shortened schedule for

18    ruling and briefing.

19    12.    In response to my email, counsel indicated that Debtor would consider a delay in

20    the Confirmation Hearing only if default rate interest being applied under the Loan Agreement

21    was suspended.   Debtor's counsel did not respond to the proposed briefing schedule.

22    13.    Later on June 20, I assisted the Funds in filing a Motion for Stay of the

23    Preliminary Injunction or a Continuance of the Confirmation Hearing, together with a separate

24    Motion to Shorten Time, which requested that the Bankruptcy Court rule on the Motion for Stay

25    of Continuance by the end of the day on Monday, June 24.

26

DECLARATION OF DAVID B. LEVANT IN SUPPORT
OF FUNDS' EMERGENCY MOTION FOR LEAVE TO
APPEAL AND FOR STAY OF INJUNCTION – 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

74101927.4 0064727-00001

27

1      14.     Later that night, counsel for Debtor objected to the Motion to Shorten Time (Adv.

2   Doc. 45) on various grounds.  There has been no further communication between counsel for the

3   Funds and for Debtor regarding the scheduling of the Funds' Motion to the Bankruptcy Court or

4   their separate Emergency Motion for leave to appeal.

5      15.     At this time the Bankruptcy Court has not ruled on the Motion to Shorten Time or

6   taken any action with respect to the Motion to Stay the Preliminary Injunction or for a

7   Continuance of the Confirmation Hearing.

8      16.     At this time the Confirmation Hearing remains scheduled for June 27 and 28,

9   2013.

10      DATED this 25th day of June, 2013.

11                                  STOEL RIVES LLP

12

13                                  By /s/ David B. Levant
                                       David B. Levant, WSBA #20528
14                                  Of Attorneys for NB Distressed Debt Investment
                                    Fund Limited, NB Distressed Debt Master Fund LP,
15                                  and Strategic Value Special Situations Master Fund
                                    II, L.P.
16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF DAVID B. LEVANT IN SUPPORT
OF FUNDS' EMERGENCY MOTION FOR LEAVE TO
APPEAL AND FOR STAY OF INJUNCTION – 4

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

3   the CM/ECF system which will send notification of such filing to the following:

4       ▪ James L Day    jday@bskd.com,
5         chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;bmorga
          n@bskd.com
6       ▪ Brian A. Jennings    bjennings@perkinscoie.com,
          mlmaag@perkinscoie.com;docketsea@perkinscoie.com;wzilka@perkinscoie.com;GEise
7         nberg@perkinscoie.com
        ▪ Jeffrey M Odom    jodom@pcslegal.com,
8         danderson@pcslegal.com;jsteinert@pcslegal.com
        ▪ Daniel P Pepple    dpepple@pcslegal.com,
9         danderson@pcslegal.com;jsteinert@pcslegal.com
        ▪ Katriana L Samiljan    ksamiljan@bskd.com,
10        chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com
        ▪ Alan D Smith    adsmith@perkinscoie.com,
11        mlmaag@perkinscoie.com;docketsea@perkinscoie.com
12      ▪ Christine M Tobin-Presser    ctobin@bskd.com,
13        chartung@bskd.com;psutton@bskd.com;vbraxton@bskd.com;mbeck@bskd.com;
          bmorgan@bskd.comThere are no manual receipts.
14
           DATED at Seattle, Washington, this 25th day of June 2013.
15

16                               STOEL RIVES LLP

17
                                 s/Hunter Ferguson
18                               David B. Levant, WSBA No. 20528
                                 Hunter Ferguson, WSBA No. 41485
19
                                 Of Attorneys for NB Distressed Debt
20                               Investment Fund Limited, NB Distressed Debt
                                 Master Fund LP, and Strategic Value Special
21                               Situations Master Fund II, L.P.

22

23

24

25

26

DECLARATION OF DAVID B. LEVANT IN SUPPORT
OF FUNDS' EMERGENCY MOTION FOR LEAVE TO
APPEAL AND FOR STAY OF INJUNCTION – 5

74101927.4 0064727-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

29

Case 3:13-cv-05503-RBL   Document 4   Filed 06/26/13   Page 32 of 60
Entered on Docket June 18, 2013

**Below is the Order of the Court.**



_____
**Brian D. Lynch**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| MERIDIAN SUNRISE VILLAGE, LLC, <br><br> Debtor. | Case No. 13-40342-BDL |
| MERIDIAN SUNRISE VILLAGE, LLC <br><br> Plaintiff, <br><br> v. <br><br> NB DISTRESSED DEBT INVESTMENT FUND, LTD, et. al, <br><br> Defendants. | Adversary No. 13-4225-BDL <br><br> **PRELIMINARY INJUNCTION** |

    The motion of plaintiff-debtor Meridian Sunrise Village, LLC for a preliminary injunction to enjoin defendants NB Distressed Debt Investment Fund Limited, Strategic Value Special Situations Master Fund II, L.P. and U.S. Bank came on for final hearing on June 17, 2013.  All current defendants appeared through counsel.

    The Court considered all pleadings filed on the motion and in response, including supporting declarations, and considered the arguments of counsel, the testimony of declarants, the documentary evidence, and the records and files of this case.

    An oral ruling was read into the record on June 17, 2013, which is hereby incorporated by reference, containing Findings of Fact and Conclusions of Law for purposes of Fed. R.

PRELIMINARY INJUNCTION - 1

Case 13-04225-BDL   Doc 39   Filed 06/18/13   Ent. 06/18/13 07:12:43   Pg. 1 of 2

Case 13-04225-BDL   Doc 55-1   Filed 06/25/13   Ent. 06/25/13 16:02:11   Pg. 1 of 2   EXHIBIT 1

80

Bankr. P. 7052, and setting forth the reasons for the preliminary injunction for purposes of Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 65(d). It is

HEREBY ORDERED that defendants NB Distressed Debt Investment Fund Limited and Strategic Value Special Situations Master Fund II, L.P. are ENJOINED from exercising their rights under Paragraph 12.9(b) or 11 U.S.C. §1126 in conjunction with the casting of ballots or votes in regard to the confirmation of Debtor's Plan of Reorganization.

It is FURTHER ORDERED that US Bank is ENJOINED from recognizing or treating the assignee Funds as Eligible Assignees for purposes of plan confirmation.


///End of Order///

PRELIMINARY INJUNCTION - 2

1               UNITED STATES BANKRUPTCY COURT

2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3

4

5    _____ )
     IN RE:                            )
6                                      )
     MERIDIAN SUNRISE VILLAGE, LLC,    )
7                                      )
                Debtor.                )     13-40342
8                                      )
     _____ )
9                                      )
     MERIDIAN SUNRISE VILLAGE, LLC,    )
10                                     )
                Plaintiff,             )
11        v.                           )     A13-04225
                                       )
12   NB DISTRESSED DEBT INVESTMENT     )
     FUND LIMITED; STRATEGIC VALUE     )
13   SPECIAL SITUATIONS MASTER FUND II,)
     L.P.; BANK OF AMERICA NATIONAL    )
14   ASSOCIATION; and U.S. BANK        )
     NATIONAL ASSOCIATION,             )
15                                     )
                Defendants.            )
16   _____

17        TRANSCRIPT OF THE DIGITALLY-RECORDED PROCEEDINGS

18            BEFORE THE HONORABLE BRIAN D. LYNCH

19                     JUNE 17, 2013

20   _____

21

22

23

24

25   PREPARED BY:  SHARI L. WHEELER, CCR NO. 2396

1                    A P P E A R A N C E S

2

3    FOR THE DEBTOR:
          JAMES L. Day
4         and
          CHRISTINE M. TOBIN-PRESSER
5         Bush Strout & Kornfeld, LLP
          601 Union Street, Suite 5000
6         Seattle, Washington 98101
          206.292.2110
7
     FOR NB DISTRESSED DEBT INVESTMENT FUND LIMITED and
8    STRATEGIC VALUE SPECIAL SITUATIONS MASTER FUND II, L.P.:

9         DAVID B. LEVANT
          Stoel Rives, LLP
10        600 University Street, Suite 3600
          Seattle, Washington 98101
11        206.624.0900

12   FOR BANK Of AMERICA NATIONAL ASSOCIATION:
          JEFFREY M. ODOM
13        Pepple Cantu Schmidt, PLLC
          1501 Western Avenue, Suite 600
14        Seattle, Washington 98101
          206.625.1644
15
     FOR U.S. BANK NATIONAL ASSOCIATION:
16        ALAN D. SMITH
          Perkins Coie, LLP
17        1201 Third Avenue, Suite 4000
          Seattle, Washington 98101
18        206.583.8888

19

20

21

22

23

24

25

```
 1              SEATTLE, WASHINGTON; JULY 18, 2012

 2                        --oOo--

 3

 4              THE COURT:  The motion of the Plaintiff/Debtor,

 5   Meridian Sunrise Village, LLC, which I will refer to as

 6   "Meridian" or "the debtor" in this ruling for a preliminary

 7   injunction to enjoin the defendants NB Distressed Debt

 8   Investment Fund, Limited, hereinafter "NB Distressed," and

 9   Strategic Value Special Situations Master Fund II, L.P.,

10   which I'll refer to as "SVP" and, collectively, "The Funds"

11   from exercising any of the rights, benefits, and privileges

12   of an eligible assignee under the loan agreement that the

13   debtor has with a syndication of lenders came on for final

14   hearing on June 17th.  The debtor seeks a preliminary

15   injunction against Defendant U.S. Bank, as well, as

16   administrative agent for the loan to prohibit U.S. Bank from

17   recognizing and/or dealing with The Funds as eligible

18   assignees.

19              At the initial hearing on May 29th, the Court

20   requested additional briefing from the parties and set a

21   further hearing for June 17th.  All current defendants

22   appeared through counsel.  Counsel for The Funds indicated

23   that he would be representing the newest assignee if and when

24   it is added as a defendant to the action.

25              The Court considered the following pleadings:
```

RULING; June 17, 2013                                                    4

1   Docket Number 2, the motion for a preliminary injunction and

2   the supporting declarations at 3, 4, and 18; U.S. Bank's

3   initial objection at Docket 10 and the declaration in support

4   at Docket 12; The Funds' objection to the motion, Docket 19;

5   the debtor's reply, Docket 20, and the declarations submitted

6   therewith, Dockets 21 and 22; the debtor's supplemental

7   memorandum, Docket 28, and the declarations submitted

8   therewith, Dockets 29 and 30; U.S. Bank's supplemental

9   opposition, Docket Number 31, and declarations therewith; The

10  Funds' supplemental objection, Docket 32, and the

11  declarations therewith; the objection of Bank of America to

12  the motion for preliminary injunction, Docket 33; the

13  debtor's reply to the supplemental memorandum, Docket 34, and

14  the declaration in support thereof; U.S. Bank's reply

15  memorandum at Docket Number 36; and The Funds' reply to the

16  debtor's supplemental memorandum at Docket Number 37.

17              The Court considered the arguments of counsel

18  and testimony of witnesses by declaration, the documentary

19  evidence, and the records and files of this case.  The

20  parties were offered the opportunity to call witnesses and

21  introduce other evidence, but the parties choose to submit

22  the issue on the record before the Court.

23              The Court finds and concludes as follows:

24              The Court determines it has jurisdiction over

25  this motion pursuant to 28 USC 1334 and that this is a core

1   proceeding under 28 USC 157(b)(2)(L), as it regards the

2   confirmation of the debtor's plan of reorganization.

3           This adversary and the debtor's motion

4   addressed The Funds' eligibility to vote on the confirmation

5   of the debtor's plan, a matter that arises only in a

6   bankruptcy case and is at the heart of a bankruptcy case.

7           Confirmation of a plan under 11 USC Section

8   1129 and voting on a plan under 11 USC 1126 are rights

9   arising from the Bankruptcy Code and, therefore, matters

10  which the Court has the power to render final decisions, per

11  Stern versus Marshall.

12          In their supplemental replies, both U.S. Bank

13  and The Funds concede that to the extent a preliminary

14  injunction relates to confirmation of the debtor's plan, this

15  Court has jurisdiction and the power to enter such an

16  injunction.

17          With respect to findings of fact, the debtor

18  and the guarantor made an agreement, which I will

19  characterize as "the loan agreement," with U.S. Bank in April

20  of 2008 for a construction loan to develop a shopping mall

21  called Sunrise Village in Puyallup, Washington.  The loan was

22  for advances up to 75 million and envisioned that there would

23  be an assignment and syndication of the loan to multiple

24  lenders.  U.S. Bank is designated as the agent for the

25  lenders, in addition to its status as the largest single

1    lender.

2            The loan agreement contains several provisions

3    that are pertinent to the issues here.  The lenders agreed,

4    in paragraph 12.3(b), that no individual lender may enforce

5    or exercise any provisions of the loan agreement, other than

6    through the agent; although any action brought to collect on

7    the loan was to be done by the agent and lenders

8    collectively, per 12.3(e).

9            Paragraph 12.9 identifies what actions can be

10   taken to modify the loan documents and what consents are

11   required.  12.9(a) provides that the agent can, except as

12   provided in clause (b) below, grant or refuse to grant any

13   consent or approval required or request of it hereunder or

14   under any of the other loan documents in its sole and

15   absolute discretion and consent or refuse to consent to any

16   modification, supplement, or waiver under any of the loan

17   documents.

18           Paragraph 12.9(b)(i), which the debtor

19   identified at the initial hearing as their greatest concern,

20   states that certain actions cannot be taken without the

21   consent of all lenders, including, among other things,

22   postponement of the maturity date of the loan and decreasing

23   the applicable interest rate, both of which are proposed in

24   the debtor's proposed plan.

25           Paragraph 12.9(b)(ii) goes on to identify other

1   actions that can be taken if a required number of lenders,

2   defined elsewhere as 66 2/3 percent, of the proportional

3   shares of the loan consent.

4           Under paragraph 13.2, any assignment of a

5   lender's interest was restricted to someone who is an

6   eligible assignee.  "Eligible assignee" is defined in

7   paragraph 1.1 as any lender or affiliate of lender or any

8   commercial bank, insurance company, financial institution, or

9   institutional lender that is approved by the agent in writing

10  and also by the debtor, provided that the debtor was not then

11  in default.

12          Lastly, under paragraph 12.16, in the event the

13  debtor filed bankruptcy, the lenders agreed that the agent

14  shall have the sole and exclusive right to file and pursue a

15  joint proof of claim on behalf of the lenders.  Each lender

16  irrevocably waives its right to file or pursue a separate

17  proof of claim in any such proceedings.

18          Shortly after the loan agreement was made in

19  May and June of 2008, 66.667 percent of the loan was assigned

20  to three other lenders.  Bank of America received 26.667

21  percent.  Citizens Business Bank received 20 percent, and

22  Guaranty Bank and Trust received 20 percent.  Collectively,

23  with U.S. Bank, I refer to them as "The Lenders."

24          The debtor consented to each of these

25  assignments.  At the time the assignments were made, the

1   debtor had received less than 20 percent of the $75 million

2   loan commitment.  So each lender who received the assignment

3   was still liable for advancing further funds, and each

4   assignment agreement states the amount of each lender's

5   unused commitment.

6                    U.S. Bank, as agent for The Lenders, declared

7   the loan in default in early 2012 based upon a nonmonetary

8   default having to do with the debt coverage under the loan

9   agreement but did not apply the default interest rate.

10                   In mid-October 2012, the debtor learned that

11  several of the lenders were looking to sell their positions

12  in the loan.  In late October 2012, U.S. Bank approached the

13  debtor on behalf of the lenders, requesting a sixth amendment

14  to the loan agreement, including redefining "eligible

15  assignee" as any person other than borrower or any affiliate

16  of borrower, essentially eliminating any restrictions on

17  assignment under paragraph 13.2.

18                   The debtor would not agree to the amendment.

19  U.S. Bank then advised the debtor that The Lenders intended

20  to exercise their rights as a result of the nonmonetary

21  default, including charging default interest.  The debtor was

22  not in default as to any payments of the loan at that time.

23                   The debtor thereafter filed bankruptcy on

24  January 18, 2013.  On the petition date, the outstanding

25  balance of the loan was approximately $54,780,000.  After the

1    commencement of the debtor's bankruptcy in March 2013, the

2    debtor was informed that Bank of America had assigned its

3    interest in the loan to NB Distressed.

4               Approximately nine days later, U.S. Bank

5    informed the debtor that NB Distressed had further assigned

6    50 percent of its interest to SVP.  The debtor's consent to

7    these assignments was not requested.  But U.S. Bank, as agent

8    for the loan, has approved the assignments in writing.  The

9    debtor contends that The Funds are not eligible assignees

10   under the loan agreement.

11              During the course of this motion, it was

12   revealed that NB Distressed has further assigned a portion of

13   its interest to a related entity, NB Distressed Master Fund,

14   L.P.  That entity is not currently a defendant in this

15   adversary.  The debtor has indicated that it intends to amend

16   the complaint to add that assignee as a defendant.

17              The current alleged percentages of interest in

18   the loan are U.S. Bank, as lender, which holds 33.333

19   percent; Citizens Business Bank holding 20 percent; Guaranty

20   Bank and Trust holding 20 percent; SVP holding 13.333

21   percent; NB Distressed holding 10.573 percent; and NBLP

22   holding 2.76 percent.

23              The Funds have submitted declarations, which

24   are uncontested, describing The Funds' purposes and financial

25   activities.  There is no factual dispute that The Funds are

1   not in the business of loaning or advancing money.  Both are

2   described as entities that invest, own holdings, investment

3   vehicles, acquiring and managing assets, making investments,

4   investment advisor with assets under management, buying and

5   holding securities and debt, and investing money.  Neither

6   fund has provided any example of a situation where it

7   initiated a loan or undertook a debt with a go-forward open

8   loan commitment.

9           The debtor submitted excerpts from The Funds'

10  websites regarding the nature of their investment activities.

11  And The Funds did not dispute that those excerpts did, in

12  fact, come from their websites.  The excerpts state, for

13  example, that SVP focuses on distressed, deep-value

14  opportunities in middle-market companies where we can

15  typically exert significant influence or, in some cases,

16  obtain outright control, and that it typically takes an

17  active role in transactions, driving a company's

18  restructuring through bankruptcy, participating on a

19  creditors' committee, or driving the strategic and

20  operational direction of the company.  SVP further attempts

21  to exert meaningful influence on the restructuring and

22  post-restructuring activities of its investments and will

23  deploy our operating partners as needed.  SVP's declaration

24  admits that SVP will acquire and hold real estate as part of

25  its business.

1           NB Distressed states on its website that it
2    captures once-in-a-generation opportunities in distressed
3    debt, focusing on senior debt backed by hard assets in
4    distressed, stressed, and special-situation investments.
5           The Court's conclusions of law follow.
6           The Court must determine whether the debtor has
7    established the following:
8           First, that the debtor is likely to succeed on
9    the merits of its claims; secondly, that the debtor is likely
10   to suffer irreparable harm in the absence of preliminary
11   relief; third, that the balance of equities tips in the
12   debtor's favor; and fourth, that an injunction is in the
13   public interest.  And here, I'm quoting from the Winter case.
14   Regarding the issue of the likelihood of success on the
15   merits, the debtor's complaint in this adversary appears to
16   allege causes of action for declaratory and injunctive
17   relief, both of which are remedies, not claims, but which are
18   based upon allegations of breach of contract.
19           The debtor avers that Bank of America's
20   assignment to The Funds was improper because The Funds are
21   not eligible assignees, as they do not fall within one of the
22   types of specified entities listed in the definition of
23   eligible assignees in paragraph 1.1.
24           The parties concede that The Funds are not a
25   commercial bank, insurance company, or institutional lender.

1   And so the briefing on the motion has been about whether The

2   Funds qualify as a financial institution.

3              The Funds have urged the Court to adopt the

4   definition of financial institution from Black's Law

5   Dictionary, which defines the words as a business,

6   organization, or other entity that manages money, credit, or

7   capital, such as a bank, credit union, savings and loan

8   association, securities broker or dealer, pawn broker, or

9   investment company.

10             The debtor contends that the term must be

11  looked at in the context of the document and the other types

12  of entities listed in the definition of "eligible assignee,"

13  which are all entities that regularly loan funds.

14             The debtor notes the Washington statutes and

15  the Bankruptcy Code both have a definition for "financial

16  institution" that is more restrictive than Black's Law

17  Dictionary and limits the term to the lending-type entities

18  it contends were meant.

19             In fact, the Revised Code of Washington defines

20  "financial institution" over 30 times in the statutes; and

21  with one exception, The Funds would not qualify as a

22  financial institution under those definitions.

23             As there does not appear to be a dispute about

24  the nature of The Funds' activities, at least insofar as to

25  whether or not they may be characterized as financial

1   institutions, the Court can decide whether The Funds are

2   financial institutions, as that term is used in the loan

3   agreement, as a matter of law.

4           The Court would note that there has been a

5   discussion in the briefs about parol evidence, but neither

6   party has sought to introduce parol evidence about the

7   meaning of the term "financial institution" in the loan

8   agreement.

9           The loan agreement is governed by Washington

10  law, per paragraph 14.15.  Washington follows an objective

11  manifestation theory in interpreting contracts, focusing on

12  the objective manifestation of an agreement and imputing the

13  parties' intentions by giving reasonable meaning to the words

14  used.  And here, I quote from Hearst Communications versus

15  Seattle Times.  The various definitions for "financial

16  institutions" in other sources and statutes, while

17  instructive, are not binding on the Court, as the Court must

18  determine what the term "financial institution" means in the

19  context of the loan agreement.  Given the varying notions of

20  the meaning of the term, it is, at a minimum, ambiguous.

21          The first problem with The Funds' argument

22  about what "financial institution" means in the loan

23  agreement -- its proper definition is so broad that it

24  essentially writes out the need to have any other terms in

25  that sentence -- is that under The Funds' definition of

1  financial institution, that term alone would already

2  encompass commercial bank, insurance company, or

3  institutional lender.

4          The other problem is that each of the other

5  entities identified in the definition of "eligible assignee"

6  is an entity which makes loans.  The canon of construction

7  known as noscitur a sociis recognizes that when the meaning

8  of a term is ambiguous, the meaning is informed by the other

9  words in the same list in the contract.

10          This suggests that the intent of the words

11  "financial institution" in the loan agreement is a more

12  restrictive definition, as suggested by the debtor.

13  Moreover, looking at the purpose of the loan agreement

14  overall, it was to make a loan to the debtor.

15          Each of the lenders undertook its assignment

16  with the purpose of advancing loan funds to the debtor in the

17  amounts of the commitment identified on their assignments.

18  The loan agreement envisioned that U.S. Bank would assign

19  interest in the loan to eligible assignees, who would then

20  fulfill their pro rata share of the loan commitment, which in

21  fact happened.

22          The assignments to The Funds have not been

23  provided, but there has been no indication that The Funds

24  have agreed to take on any obligation to advance loan funds

25  to the debtor.

1            The Funds are not in the business of loaning

2    money.  They invest and hold the investment assets.  This is

3    a different relationship and not one that the Court concludes

4    was contemplated under the loan agreement.  There are other

5    financial institutions which loan money, such as mortgage

6    bankers and other lenders, to less than Class A borrowers.

7    The logical interpretation of "eligible assignees" is that

8    those other types of lenders were meant by the term

9    "financial institution," as used in the loan agreement.

10           Therefore, the Court concludes that The Funds

11   are not eligible assignees under the loan agreement and,

12   therefore, concludes that it is likely that the debtor would

13   succeed on the merits of its claim in this action.

14           Regarding irreparable harm, the irreparable

15   harm prong makes the Court anticipate what will happen, as a

16   practical matter, following the denial of a stay, as an

17   example.  Possible irreparable harm is individualized in each

18   case.

19           The loan agreement undisputedly limits the

20   debtor to one proof of claim for the loan, clearly stated in

21   paragraph 12.16.  Section 1126 provides that the holder of a

22   claim or interest may accept or reject a plan.  Therefore, it

23   appears as the debtor's plan is currently structured for

24   Class 2, that there is only one claim for the loan agreement

25   and, therefore, only one vote on the plan that may be cast on

1    behalf of all the lenders.

2              The parties raised, in oral argument at the

3    first hearing, the notion that each lender under the loan

4    agreement was entitled to a vote; and, therefore, The Funds

5    could not influence or prevent the other lenders from voting

6    in favor of the plan because each vote would be counted

7    individually under 1126 and 1129.  The Court asked for

8    further briefing that this is the case, but no one has

9    provided any legal authority that outweighs the clear

10   language of paragraph 12.16 that there's only one vote to be

11   cast.

12             U.S. Bank submitted the declaration of James

13   Gradel in Docket Number 27 that describes the loan as a

14   syndicated loan where multiple lenders provide financing.

15   And although the loan is administered by an administrative

16   agent, each lender has a direct contractual relationship with

17   the borrower.  However, this doesn't address the impact of

18   either 12.16 or the other provisions of the loan agreement,

19   such as paragraph 12.9, where the lenders have contractually

20   agreed amongst themselves that only the agent shall be the

21   one to act on behalf of all lenders, subject to certain

22   rights retained by all of the lenders.

23             The debtor has alleged that the harm it faces

24   is that in determining how the vote is cast, The Funds can

25   exercise their rights under paragraph 12.9, and any one of

1    them, including the entity that only owns 2.76 percent, can

2    force U.S. Bank to reject the plan on a Class 2 ballot, to

3    the extent that the plan impacts any of the rights that

4    require unanimous consent under paragraph 12.9(b), which the

5    plan clearly does, as it proposes to change the interest rate

6    and maturity date of the loan.

7             The debtor claims that The Funds, as a

8    different type of investment entity, may be motivated not

9    just to recover on their debt like the other lenders, but to

10   try to take over and acquire the Sunrise Village Mall.  The

11   debtor claims that this harms its ability to try to negotiate

12   with the lenders and find terms that Class 2 could agree to,

13   forcing it to seek to cram down a plan under 1129(b) in a

14   contested confirmation hearing.

15            Beyond paragraph 12.16 and Section 1126, case

16   law supports a finding that there is just one vote here but

17   that the agent must cast it in accordance with the required

18   consents of the other lenders, as stated in the loan

19   agreement.

20            Here, I reference the Rosewood at Providence

21   case, the Mizuho Corp. Bank, Ltd. versus Enron Corp. case,

22   and the Beal Savings Bank versus Sommer cases from the Court

23   of Appeals for the State of New York.  Where lenders agree

24   among themselves that an agent shall be the one to take

25   certain actions such as filing a proof of claim, enforcing

1   the loan agreements, or voting on a plan, only the agent may

2   do so in a debtor's bankruptcy.  But the agent still must act

3   subject to the provisions of the agreement, such as taking

4   actions only where the required approval by other lenders is

5   present.

6            Lastly, as the debtor has noted, even if each

7   lender had the right to cast a vote, there would be six votes

8   in Class 2 of the debtor's plan:  three from the original

9   lenders -- U.S. Bank, Citizens, and Guaranty -- and three

10  from The Funds.  Section 1126(c) requires approval of

11  two-thirds of the class in dollar value, which the debtor

12  could get by getting votes in favor from the original

13  lenders, and votes of more than half in number of the claims

14  in the class voting.  The debtor would have to get four votes

15  in favor of Class 2 to approve.  And it cannot do so without

16  getting the vote of at least one of The Funds.

17           Whether The Funds exercised their power to veto

18  provisions in the plan through paragraph 12.9(b) or under

19  1126 of the code, in either event, this prejudices the debtor

20  in the confirmation process.  Therefore, the Court concludes

21  that the debtor does face likely irreparable harm of having

22  its negotiations with the proper lenders and a potential

23  consensual agreement subject to the veto power of The Funds,

24  which are likely to have different motivations and goals for

25  recovery out of the debtor's reorganization.

1              While U.S. Bank and The Funds are correct that

2    the debtor is not entitled to a consensual confirmation, the

3    debtor certainly has the right to negotiate with eligible

4    assignees under the loan agreement.  And certainly no debtor

5    should be hindered from attempting to reach consensus with

6    its creditors by the presence of an improper party at the

7    table or one there in bad faith.

8              The Court further finds that this potential

9    harm to the debtor is not one that can be adequately remedied

10   -- an adequately remedied harm with money damages.  Let me

11   repeat that sentence.  The Court further finds that this

12   potential harm to the debtor is not one that can be

13   adequately remedied with money damages.

14             While it would be easy to quantify the debtor's

15   time and cost in having to undergo a contested confirmation

16   hearing, it will be nearly impossible for the debtor to show

17   what portion of that is attributable to The Funds, as opposed

18   to the other causes.  If the debtor cannot successfully

19   confirm a plan after a contested confirmation hearing, the

20   damages become even more difficult to quantify.

21             Given that the harm the debtor faces cannot be

22   quantified in damages, and the ability to obtain a consensual

23   plan cannot be fixed later -- cannot be determined later --

24   excuse me.  Given that the harm the debtor faces cannot be

25   quantified in damages, the Court finds that the harm to The

1    Funds of being prohibited from exercising their rights under

2    paragraph 12.9 as to the voting on the debtor's plan is

3    limited and doesn't outweigh the potential harm to the

4    debtor.

5              The Funds are still entitled to receive their

6    proportionate distributions under the loan agreement and

7    retain all other rights, benefits, and privileges under the

8    loan agreement pending further resolution of this matter.

9    Moreover, the interest of The Funds in the debtor's

10   obligation, at least insofar as they track that of the other

11   lenders, will be protected by the remaining eligible lenders,

12   including U.S. Bank.

13             The Court finds that there is a public interest

14   in protecting the confirmation process in bankruptcy that

15   supports granting this limited injunction.  The code is

16   replete with provisions that exemplify the desire to maintain

17   good faith in the confirmation process.  While postfiling

18   assignments by creditors are common, it is particularly

19   important to protect the provisions of the loan agreement

20   regarding assignments when those assignments take place

21   postpetition.

22             Indeed, the Court has before it the loan

23   agreement, which clearly addresses what rights The Funds have

24   and reveals how The Funds could prohibit the debtor from

25   obtaining a consensual plan without a lengthy confirmation

1    hearing on whether the plan can be crammed down under Section

2    1129(b) even though they may not properly hold rights in the

3    loan agreement.  There is a public interest in preserving the

4    contract rights of both borrowers and lenders, which is the

5    intent of the preliminary injunction sought here.

6              U.S. Bank has argued that Bank of America

7    should be allowed to temporally vote if The Funds are found

8    to be not eligible assignees.  I note that B-of-A has not

9    asked for that right.  But in any event, it is not for this

10   Court to address the contractual rights between The Funds and

11   B-of-A.  If B-of-A wants the right to vote, then it would

12   have to unravel the assignments, which again is a matter of

13   contract between it and The Funds.

14             Therefore, taking each element of the

15   preliminary injunction requirements in turn, the Court finds

16   that the debtor is likely to succeed on the merits of its

17   claim; that The Funds are not eligible assignees; and that

18   the debtor will likely be irreparably harmed if The Funds are

19   allowed to participate in the voting on Debtor's plan, either

20   under paragraph 12.9 of the loan agreement or pursuant to

21   Section 1126 of the Bankruptcy Code, in that The Funds could

22   force U.S. Bank, as agent, to refrain from submitting a

23   ballot in favor of the plan, or by voting together could

24   prevent the lenders from supporting the plan, at least as to

25   the certain critical plan confirmation issues.

1         Similarly, if The Funds are allowed to vote

2    under Section 1126, they can effectively veto any agreement

3    worked out between the eligible lenders and the debtor.  The

4    equities tip in favor of the debtor under these

5    circumstances.  Such harm cannot be undone after the fact

6    because the debtor will likely be unable to prove whether the

7    ineligible assignees are making decisions simply to protect

8    their position as lenders or for other more sinister motives.

9    And it will be highly difficult to determine and quantify

10   money damages if The Funds are allowed to exercise their veto

11   rights.

12         There is a public interest in the Court

13   protecting both confirmation processes and contractual rights

14   of parties.  So the Court will enter a limited preliminary

15   injunction prohibiting The Funds from exercising their rights

16   under paragraph 12.9(b) for purposes of voting on the

17   debtor's plan of reorganization and similarly from voting

18   under Section 1126 of the code.

19         U.S. Bank is enjoined from treating The Funds

20   as eligible assignees under the loan agreement; although this

21   will not prohibit U.S. Bank from communicating with The

22   Funds.

23         For the reasons stated below and based on the

24   findings and conclusions made on the record at this hearing,

25   which are hereby incorporated by reference, the Court will

1   enter an order that Defendants NB Distressed Investment Fund

2   Limited and Strategic Value Special Situations Master Fund

3   II, L.P., are enjoined from exercising their rights under

4   Section 12.9(b) in connection with the casting of ballots or

5   votes in regards to the confirmation of the debtor's plan of

6   reorganization.

7           It is further ordered that U.S. Bank is

8   enjoined and shall not recognize or treat the assignee funds

9   as eligible assignees for purposes of plan confirmation.

10  This does not prohibit U.S. Bank or the other eligible

11  lenders from communicating with The Funds, but The Funds may

12  not exercise the rights given to the lenders in section

13  12.9(b), nor may they vote under Section 1126.

14          While it only became apparent that there had

15  been a further assignment to NBLP during the course of the

16  proceedings on this motion and, therefore, NBLP has not yet

17  been named as a defendant in this action, if and when an

18  amended complaint is filed naming NBLP as a defendant, the

19  terms of this preliminary injunction shall apply to it, as

20  well, as soon as NBLP is served with the complaint, provided,

21  however, that NBLP shall be able to identify such further

22  facts or law that indicate it should not be subject to the

23  same relief by bringing a motion seeking to have the

24  injunction lifted or modified as to NBLP.

25          Are there any questions?

1              Mr. Smith?

2              MR. SMITH:  Your Honor, yeah.  I'm sorry.  Very

3    briefly.  I think you said, at an earlier stage, that U.S.

4    Bank would not be enjoined from making payments of pro rata

5    amounts to The Funds.

6              THE COURT:  Correct.

7              MR. SMITH:  Okay.  You didn't say it at the

8    very end in the conclusion, but I just want to make sure we

9    are not enjoined from making payments.

10             THE COURT:  The injunction is as limited as I

11   indicated --

12             MR. SMITH:  Through the plan confirmation

13   proceedings?

14             THE COURT:  Yes.

15             MR. SMITH:  Okay.  Thank you, Your Honor.

16             THE COURT:  Thank you, Counsel.

17             Mr. Levant, do you have something you want to

18   add?

19             MR. LEVANT:  I have questions, Your Honor.

20             THE COURT:  You have questions.

21             MR. LEVANT:  First, I appreciate the narrow

22   scope of the preliminary injunction; that it will only be

23   with respect to voting power.  And I want to confirm, then,

24   that The Funds may participate with the other lenders, whose

25   status is not disputed, in discussions -- there are frequent

1   lender calls, communications with counsel -- that the order

2   will only apply to the actual voting under the specified

3   sections of the loan agreement and the plan.

4                THE COURT:  That's correct.

5                MR. LEVANT:  Thank you, Your Honor.

6                THE COURT:  I want to encourage that you be a

7   participant in the discussions.  I still have an optimist's

8   view that this matter may be resolved.  If it isn't, I'm

9   prepared to proceed.

10               MR. LEVANT:  Well, Your Honor, in fact, that's

11  consistent with our premise or view of the situation, which

12  is excluding our votes won't affect the outcome.  And it's

13  very important to The Funds that they know what's going on,

14  whether or not their votes are cast.  We don't think it will

15  change the voting.

16               Your Honor, I also request, with respect to the

17  preliminary injunction and the security provision, whether

18  the Court has considered or ruled on the security required

19  pursuant to Rule 7065?

20               THE COURT:  I have not considered it.  I think

21  there's some provision in that section about not necessarily

22  requiring it of debtors.  But if you want to request that the

23  Court enter an order requiring security, I'll consider it

24  when you file such a motion.

25               MR. LEVANT:  We will do so.  Thank you, Your

1  Honor.

2         Thank you.  I have no other questions or

3  comments.

4         THE COURT:  All right.

5         MR. DAY:  Your Honor, how does this affect the

6  motion for sharing information that U.S. Bank has brought?

7         THE COURT:  Well, I assume, because I've

8  concluded that they're not eligible assignees, that they're

9  not entitled to the information about the guarantor, except

10 to the extent that you want to otherwise waive it, or your

11 client otherwise waives it for whatever purposes that might

12 serve in the context of the confirmation process.

13        MR. DAY:  Correct.  Thank you, Your Honor.  And

14 the Court will be getting the order out, as opposed to one of

15 us?

16        THE COURT:  Yes.

17        MR. DAY:  Okay.  Thank you, Your Honor.

18        THE COURT:  Thank you, Counsel.

19        I would add that much as words are known by the

20 company they keep, good lawyers are as well.

21

22        (The proceedings were concluded.)

23

24

25

RULING; June 17, 2013                                                          27

```
 1                              CERTIFICATE

 2

 3

 4

 5      SHARI L. WHEELER certifies that:

 6

 7      The foregoing pages represent a complete transcript of

 8   the digitally-recorded proceedings.  Some editing changes may

 9   have been made at the request of the Court.

10

11      These pages constitute the original or a copy of the

12   original transcript of the proceedings to the best of my

13   ability.

14

15      Signed and dated this 21st day of June, 2013.

16

17

18                            by /s/ Shari L. Wheeler

19                            SHARI L. WHEELER, CCR NO. 2396

20

21

22

23

24

25
```